IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOSHUA M. BARRETT                                                                                      PETITIONER
ADC #170022

V.                              Case No. 4:23-CV-00983-JM-BBM

DEXTER PAYNE,
Director, ADC                                                                                          RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody may adopt this Recommendation without independently reviewing all the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

**I.     INTRODUCTION**

On October 16, 2023, the Court received Petitioner Joshua M. Barrett's ("Barrett") *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Barrett is an inmate in the Cummins Unit of the Arkansas Division of Correction ("ADC"). On November 20, 2023, Barrett filed an Amended Petition to correct a typographical error.[1]

---

[1] The Amended Petition is not signed, so the Court reads the original Petition and the Amended Petition together. The Court will cite to the Amended Petition for purposes of this Recommendation.

(Doc. 9). Barrett raises several issues in his Amended Petition, specifically: (1) that his counsel was ineffective for failing to prepare for trial and failing to challenge his unlawful arrest, (Doc. 11 at 4–6); (2) that the State failed to provide to his counsel the results of his second polygraph examination before trial, *id.* at 7; and (3) that his trial counsel was ineffective for failing present expert testimony to explain the results of his second polygraph examination and to rebut the State's expert, *id.* at 6–7.

The Respondent filed a Response on November 30, 2023, alleging that Barrett's petition is untimely, and that, should the Court find it timely, the arguments are procedurally defaulted. (Doc. 12). Barrett replied, arguing (1) that the statute of limitation did not begin to run until September 14, 2023; or (2) in the alternative, that he is entitled to equitable tolling of the statute of limitation. (Doc. 14).

For the reasons discussed below, the Court recommends that Barrett's Petition and Amended Petition be dismissed as untimely.

## II.   BACKGROUND

On April 20, 2018, Barrett was found guilty of six counts of rape in the Circuit Court of Pike County, Arkansas, and was sentenced to 150 years in the ADC. (Doc. 12-1). Barrett filed a direct appeal of his conviction and sentence, which was denied by the Arkansas Court of Appeals on March 13, 2019; the mandate was entered on April 2, 2019. (Docs. 12-4, 12-5). Barrett then timely submitted a petition for post-conviction relief pursuant to Arkansas Rule of Civil Procedure 37.1 on May 29, 2019. (Doc. 12-6). His petition was denied, and that denial was affirmed by the Arkansas Court of Appeals on January 20, 2021. (Doc. 12-10). The Arkansas Supreme Court denied Barrett's petition for review on

March 18, 2021, and the Arkansas Court of Appeals issued the mandate on the same day. (Docs. 12-13, 12-14). Barrett filed a Petition for Writ of Habeas Corpus in the above-captioned matter on October 11, 2023.[2] (Doc. 1).

## III.   DISCUSSION

### A.   Statute of Limitation

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year limitation period for a state prisoner to file a federal habeas corpus petition. 28 U.S.C. § 2244(d)(1). The statute of limitation period runs from the latest of:

(A)   the date on which the judgment became final by the conclusion of a direct review or the expiration of the time for seeking such a review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* at (d)(1)(A)–(D).

Barrett's direct appeal concluded on April 2, 2019. (Doc. 12-5). Barrett properly filed a petition for post-conviction relief on May 29, 2019. (Doc. 12-6); *see* 28 U.S.C. §

---

[2] Pursuant to Rule 3(d) of the Rules Governing Section 2254 cases, the Court is taking the date listed in the declaration of compliance as the filed date.

3

2244(d)(2). On March 18, 2021, the Arkansas Supreme Court issued its order denying Barrett's petition for review, and the Arkansas Court of Appeals issued a mandate on the same day. (Docs. 12-13, 12-14). Therefore, Barrett had one year from March 18, 2021—until March 18, 2022—to file his habeas petition under § 2244(d)(1)(A). As previously stated, Barrett did not petition for habeas relief until October 11, 2023, making his Petition untimely. (Doc. 1).

In fact, Barrett acknowledges, "[t]here is no dispute that Petitioner's claims . . . 'could' be barred by the statute of limitations," citing 28 U.S.C. § 2244(d)(1)(A). (Doc. 14-1 at 4). Barrett argues, however, that the statute of limitation did not being to run until September 14, 2023, when he received a copy the affidavit in support of his arrest and discovered the constitutional violation, or, in the alternative, he is entitled to equitable tolling. *Id*. at 4–5.

B.   **Arrest Warrant**

First, Barrett argues that the statute of limitation did not begin to run until September 14, 2023, when he received the affidavit in support of his arrest warrant and discovered the constitutional violation (lack of probable cause). (Doc. 14 at 3–4). Barrett mistakenly relies on § 2244(d)(1)(D) in support of this argument. Section 2244(d)(1)(D) provides that the statute of limitation shall run from "the date on which the factual predicate of the claim or claims presented *could have been discovered through the exercise of due diligence*." (emphasis added).

Barrett avers that his mother was able to obtain the requested affidavit from the state prosecutor through a Freedom of Information Act ("FOIA") request. (Doc. 14 at 3–4).

4

Although Barrett argues that this path was unavailable to him under State law because he was an inmate, he doesn't explain why he was unable to ask his mother to make the request earlier or why he didn't seek to obtain the affidavit through trial counsel and/or appellate counsel. *Id.*; (Doc. 11 at 8) ("the Constitutional violations complained of herein did not come to light until Petitioner's Mother filed [a] Freedom of Information Act [](FOIA) [r]equest[].").

Moreover, the Court takes judicial notice that the affidavit is openly available online through Arkansas Court Connect under Barrett's criminal case number 55CR-17-48 and has been available since May 11, 2017. Affidavit for Warrant, *State v. Joshua Barrett*, Pike County Circuit Court Case No. 55CR-17-48 (filed on May 11, 2017).[3] Barrett provided a copy of the affidavit as an attachment to both his original Petition, (Doc. 1 at 10), and his Amended Petition, (Doc. 11 at 10). And, Barrett acknowledges that the arrest warrant at issue was "discoverable" prior to his April 2018 jury trial when the prosecuting attorney answered his attorney's discovery request. (Doc. 14-1 at 5). Therefore, had Barrett been diligent, the affidavit in question could have been discovered by him, not only within the statute of limitation, but also *prior* to his trial.

In sum, because Barrett did not exercise due diligence, § 2244(d)(1)(D) does not apply, and the statute of limitation began to run on March 18, 2021, when the Arkansas Supreme Court denied his petition for review.

---

[3] Arkansas state court records can be found using the Arkansas Judiciary's Court Connect website: https://caseinfo.arcourts.gov/opad (last accessed Oct. 9, 2024).

### C. Equitable Tolling

In the alternative, Barrett argues that he is entitled to equitable tolling of the one-year statute of limitation for the following reasons: (1) he did not have access to the law library for several months, (Doc. 14 at 6); (2) he could not bring a FOIA request previously, *id.* at 6–7; (3) he was unable to reach his trial counsel to discuss the appeal, *id.* at 7; and (4) the COVID pandemic created an extraordinary circumstance that deserves equitable tolling, *id.* at 8.

The statute of limitation is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). In *Holland*, however, the Court held that equitable tolling only applies in "appropriate cases." *Id.* To qualify as an "appropriate case" for equitable tolling, Barrett bears the burden of proving: (1) that he pursued his rights diligently and (2) "that some extraordinary circumstance beyond his control stood in his way" and prevented him from timely filing his petition. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *see also Earl v. Fabian*, 556 F.3d 717, 722 (8th Cir. 2009) ("We will decline to apply the doctrine of equitable tolling if a habeas petitioner has not diligently pursued his rights."). The Eighth Circuit has held that, while the one-year statute of limitation may be equitably tolled in extraordinary circumstances, this is an "exceedingly narrow window of relief" that is infrequently given. *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001) ("any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes") (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

As a preliminary matter, according to the Eighth Circuit, lack of legal knowledge—even when the plaintiff is *pro se*—does not qualify as an "extraordinary circumstances." *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000) ("Even in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted."); *Preston v. State*, 221 F.3d 1343, 2000 WL 995013, *1 (8th Cir. Jul. 20, 2000) (unpublished) ("[Petitioner's] unfamiliarity with federal law is not a ground for equitable tolling").

The Court will address each of Barrett's arguments, in turn.

1. **Access to Law Library**

Barrett's argument that his inability to access the law library from April 6, 2020, through October 11, 2022, (Doc. 14-1 at 6), qualifies him for equitable tolling is unavailing. Barrett cites *Bounds v. Smith* in support of his argument that he had a right to access a law library. 430 U.S. 817 (1977). Yet, as the United States Supreme Court later held, *Bounds* "did not create an abstract, freestanding right to a law library." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Rather, inmates must be afforded "meaningful access to the courts." *Bounds*, 430 U.S. at 824. Providing a law library is merely one way to grant meaningful access to the courts. Furthermore, equitable tolling is not justified by a petitioner's *pro se* status, lack of legal resources, or any confusion about the federal limitations period or state post-conviction law. *See, e.g.*, *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007) (holding no equitable tolling due to confusion about the law, court-appointed counsel's miscalculation, or petitioner's alleged mental incapacity); *Earl v. Fabian*, 556 F.3d 717, 724–725 (8th Cir. 2009) (holding no equitable tolling due to delayed receipt of case file,

7

*pro se* status, lack of access to legal materials, and limited time in library); *Shoemate v. Norris*, 390 F.3d 595, 597–98 (8th Cir. 2004) (holding no equitable tolling due to petitioner's lack of legal knowledge or legal resources); *Baker v. Norris*, 321 F.3d 769, 771–72 (8th Cir. 2003) (holding no equitable tolling due to petitioner's limited law library access).

Even liberally construing Barrett's reply, he only argues he did not have access to the library because it was being used to quarantine sick inmates. (Doc. 14 at 6). Barrett does not assert that he was unable to receive materials from the library or was otherwise denied access to the contents of the library, nor does Barrett state how he was prejudiced by an inability to access the library.[4] In *Muhammad v. United States*, the Eighth Circuit held that a Petitioner's access to "paper and writing implements" and the ability to contact the court and receive mail from the court was sufficient to provide meaningful access to the courts. 735 F.3d 812, 815 (8th Cir. 2013). The Court further held that, "we have recognized that equitable tolling was not proper when an unrepresented prisoner claimed lack of legal resources." *Id.*

Consequently, Barrett's argument regarding his lack of access to the library during the Covid-19 pandemic fails to justify the "exceedingly narrow" opportunity of equitable tolling.

---

[4] The Arkansas Department of Correction states that inmates who are administratively sequestered have access to the materials "via library cart." *See*, *Inmate Programs*, ARKANSAS DEPARTMENT OF CORRECTIONS, https://doc.arkansas.gov/correction/inmates/inmate-programs-and-services/inmate-programs-page-3/ (last visited Oct. 8, 2024).

### 2. Access to the FOIA Process

Barrett further argues that his lack of access to the FOIA process created an extraordinary circumstance, justifying equitable tolling of the statute of limitation. As discussed in Section III(B), Barrett's ability, or lack thereof, to access information through a FOIA request is not an extraordinary circumstance, as the evidence he sought was readily available to the public online and to his counsel. Thus, Barrett's inability to request the affidavit in support of his arrest through a FOIA request because of his status an inmate does not entitle him to equitable tolling of the statute of limitation.

### 3. Appellate Counsel's Failure to Respond

Barrett next alleges that his appellate counsel's failure to respond to his and his family's inquiries regarding whether he would continue to represent Barrett in pursuing post-conviction relief created a situation that requires equitable tolling. (Doc. 14-1 at 7–10). Notably, there is no constitutional right to counsel in non-capital habeas proceedings. *Blair v. Armontrout*, 916 F.2d 1310, 1332 (8th Cir.1990); *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (holding no constitutional right to counsel in federal habeas); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("right to appointed counsel extends to the first appeal of right, and no further"); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) ("habeas corpus proceedings are civil in nature"); *Boyd v. Groose*, 4 F.3d 669, 671 (8th Cir.1993). Thus, because Barrett was not entitled to counsel for this habeas action, his failed attempts to retain private counsel to represent him in obtaining post-conviction relief do not serve to toll the applicable statute of limitations. *See*

*Jihad v. Hvass*, 267 F.3d 803, 806 (8th Cir. 2001) ("[A]n unsuccessful search for counsel was not an extraordinary circumstance warranting equitable tolling.").

Moreover, Barrett admits that neither he nor his family paid his appellate counsel to represent him in obtaining post-conviction relief, and Barrett makes no argument that there was an agreement or understanding that appellate counsel would continue to represent him in a federal habeas action. (Doc. 14-1 at 7). Specifically, Barrett states that he and his family tried to contact appellate counsel from March to November 2021, but their calls, letters, and emails went unanswered "due to sickness in his law office." *Id.* Once Barrett's family was able to reach his appellate counsel, they were informed that he would only continue to represent Barrett if they were "willing to pay." *Id.* Barrett acknowledged that his family was unable to continue to pay appellate counsel's "exorbitant legal fees." *Id.* In sum, Barrett's unsuccessful attempts to retain counsel do not present an extraordinary circumstance warranting equitable tolling of the statute of limitations.

### 4.     The COVID Pandemic

Lastly, Barrett relies on the extraordinary nature of the COVID pandemic as justification for equitable tolling. Although Barrett states that he became infected with COVID around November 2021 and was in quarantine, he does not allege that he was too ill to work on his habeas petition; rather, he notes that, during COVID lockdowns, he did not have access to the law library.

As explained previously, Barrett's lack of access to the law library does not justify equitable tolling, even in light of the COVID-19 pandemic. *See Simmons v. United States*, No. 4:21-cv-729-AGF, 2021 WL 4191616 (E.D. Mo. Sept. 15, 2021) (finding no equitable

tolling where COVID-19 restrictions made it difficult for movant to access law library); *U.S. v. Haro*, No. 8:18-CR-66, 2020 WL 5653520, at *4 (D. Neb. Sept. 23, 2020) (holding COVID-19 lockdown, which limited a petitioner's access to the law library and ability to make copies, was insufficient to justify equitable tolling.); *Mims v. United States*, 2021 WL 409954, at *3 (E.D. Mo. Feb. 5, 2021) (holding a claim of inability to access a law library due to a COVID-19 lockdown was insufficient to warrant application of equitable tolling where the movant failed to establish he was pursuing his rights diligently beforehand.); *Howard v. United States*, 2021 WL 409841, at *4 (E.D. Mo. Feb. 5, 2021) (collecting cases holding that a lack of law-library access generally does not warrant equitable relief); *see also United States v. Thomas*, 2020 WL 7229705, at *2 (E.D. La. Dec. 8, 2020) (rejecting a claim of entitlement to equitable tolling premised upon pandemic-related lack of law library access where the movant failed to show he diligently pursued his rights before the lockdown); *United States v. Barnes*, 2020 WL 4550389, at *2 (N.D. Okla. Aug. 6, 2020) (assuming a COVID-19-related lockdown "delayed defendant's ability to file his motion," but concluding equitable tolling was unwarranted because the defendant did not demonstrate he had diligently pursued his claims).

Barrett further argues that, because the Arkansas Supreme Court "softened" its application of the Arkansas Rules of Appellate Procedure in light of the COVID pandemic, citing *Hawkins v. State*,[5] this Court should "soften" the one-year statute of limitations in

---

[5] The Court takes notice of court records found using the Arkansas Judiciary's Court Connect website: https://caseinfo.arcourts.gov/opad (last accessed Oct. 9, 2024).

11

this case. (Doc. 14-1 at 8). The circumstances presented in *Hawkins v. State*, however, are distinguishable and do not serve to support Barrett's request for equitable tolling. Pro Se Mot For Belated Appeal, *Hawkins v. State*, CR-23-531 (Ark. Aug. 8, 2023). First, Hawkins's case was a criminal appeal and not a civil habeas action. Moreover, the Arkansas Supreme Court did not provide a reason for allowing Hawkins to file his petition late; it merely issued an order stating that he could. Formal Order, *Hawkins v. State*, CR-23-531, (Ark. Aug. 30, 2023). Barrett presents no reason for this Court to treat these two disparate cases the same, and the Covid-19 pandemic does not justify equitable tolling of the statute of limitation in this case.

### IV.   CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal a denial of his petition unless he is granted a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); FED. R. APP. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (holding a certificate of appealability should issue when a district court decides a case on procedural grounds only if "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."). The Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Barrett's claims any differently than they have been decided here. Therefore, the Court recommends that Barrett not be granted a COA in this matter.

## V.     CONCLUSION

Because Barrett did not file his habeas petition within one year of the date his State judgment became final—by March 18, 2022, and Barrett presents no extraordinary circumstances warranting equitable tolling of the statute of limitation, his petition should be dismissed with prejudice, and the relief requested should be denied.[6] 28 U.S.C. § 2244(d)(1)(A).

IT IS THEREFORE RECOMMENDED THAT:

1.     Barrett's Petition for Writ of Habeas Corpus, (Doc. 1), and Amended Petition for Writ of Habeas Corpus, (Doc. 11), be DISMISSED with prejudice.

2.     A Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(2).

3.     Judgment be entered accordingly.

DATED this 11th day of October, 2024.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] Because the Court recommends that the petition be dismissed as untimely, the Court did not discuss the issues of procedural default and waiver.